F. M. HINSON AND WIFE v. JOHN KERR AND WIFE.

(Filed 26 November, 1919.)

**Deeds and Conveyances—Probate—Husband and Wife—Private Examination —Contracts to Convey—Bond for Title—Adverse Possession—Limitation of Actions.**

A contract to convey the wife's land, joined in by her husband, but without probate and the privy examination of the wife, is void, and the possession of the grantee thereunder is not hostile to the wife's interest

or title to the lands, and will not ripen his title by seven years adverse possession, without evidence to show payment of the purchase money or of any act or conduct on his part hostile to the wife's title.

APPEAL by defendant from *Shaw, J.,* at the September Term, 1919, of MECKLENBURG.

This is a proceeding for the partition of land transferred to the Superior Court upon an issue of sole seizin relied on by the defendant.

Prior to 1896 Tirsey Hinson, a married woman, was the owner of the land in controversy, and on 29 September, 1896, the said Tirsey Hinson and her husband delivered to the defendant a paper-writing in the form of a bond for title, agreeing to convey said land to the defendant upon the payment of $400.

The paper-writing was signed by the said Tirsey Hinson and her husband, but there was no probate to the same, and the private examination of Tirsey Hinson was not taken.

Tirsey Hinson died on 7 December, 1896, leaving a will in which she devised said land to her two sons, William R. Hinson and F. M. Hinson, with the right in her husband to have the use and benefit of said land during his lifetime, which said will was probated on 9 January, 1897.

On 26 May, 1899, William R. Hinson, one of the devisees in the will of Tirsey Hinson, conveyed his undivided one-half of said land to the defendant.

E. H. Hinson, the husband, died on 21 October, 1916, and this proceeding was instituted on 24 March, 1919.

The defendant was examined as a witness in his own behalf, and testified as follows:

"I am the defendant in this case. I occupy the Nancy Little dower tract of land. I took possession of it in 1896, right immediately after this paper was executed. In September, I believe. This paper was given to me at the time. E. H. Hinson wrote that paper. I bought it in September, 1896, and I began paying taxes on it in 1897. I live on this tract of land. Yes; I built on it. I opened up the land and have been on it since that time. I have been working it since 1897. I have made tax returns for it every year since that time. Yes; the paper you now show me is the paper I spoke of just now. That is the paper that Mrs. Tirsey Hinson and E. H. Hinson signed. I went into possession of the land the day the paper was signed; he told me to go right down. Yes; I went into possession on account of that paper. Yes; I still have possession of it on account of that paper."

His Honor instructed the jury if they believed the evidence to answer the first issue "Yes," and the second issue "No," to which the defendant excepted, and the jury returned the following verdict:

"1. Is the plaintiff owner and entitled to the possession of an undivided one-half interest in the lands described in the petition? Answer: 'Yes.'

"2. Is the plaintiff's right to recover the one-half interest in said lands barred by the statute of limitations? Answer: 'No.'"

Judgment was entered upon the verdict in favor of the plaintiff, and the defendant appealed.

*Stewart & McRae and John M. Robinson for plaintiff.*
*J. D. McCall and J. F. Newell for defendant.*

ALLEN, J. As the land in controversy belonged to a married woman, and there was no probate or private examination of the paper-writing under which the defendant entered upon the land, the paper is ineffectual to pass any title or interest in the land, and the defendant must therefore rely upon adverse possession to defeat the claim of the plaintiff.

He admits that he entered upon the land under the paper-writing, and that he has claimed under it since that time, and he fails to produce evidence of the payment of the purchase money, or of any act or conduct which has made his possession hostile to the true owner.

Under these conditions, the law is settled by a long line of decisions beginning with *Young v. Irwin*, 3 N. C., 9, decided in 1797, up to the present time, that his possession has not been adverse to the title of the true owner.

In the *Young case* the owner of the land, one Rutherford, contracted to sell to Irwin, and Irwin went into possession under the contract and remained in possession for nearly forty years, after which time an action was brought by one who claimed under Rutherford, and the defendant relied on an adverse possession to bar the plaintiff's right, and the Court said of the claim of the defendant: "When a purchaser in a case like the present takes possession, he takes it by consent of the owner, and may continue it until he fails in payment, and then is liable at law to be turned out; he does not take a tortious possession and gain a tortious fee, as has been contended; if he is not, strictly speaking, a tenant at will, his possession is that of the owner, and not a distinct independent possession opposed to his; if he is ousted of possession by a stranger, he cannot regain it by an action in his own name, but only in an action which sets up and affirms the vendor's title. Such possession of the purchaser is therefore not an adverse possession to the vendor; and if, by the act of limitations, an adverse possession is necessary to bar the plaintiff's title, such an one as has been in the present case will not answer that description."

In *Knight v. Lumber Co.*, 168 N. C., 452, the same principle is declared as follows: "It is true that, as against the vendor, the possession of the vendee, occupying under such a contract, does not, as a rule, become hostile or adverse until something has occurred that places one of the parties in the position of resistance to the claim of the other, and, until that time, the ordinary statute of limitations does not begin to run. It has been so held with us in *Worth v. Wrenn*, 144 N. C., 656, and authorities cited."

Nor does the fact that the paper-writing was void because imperfectly executed affect the character of the possession.

"As a general rule, the invalidity of the executory contract of purchase will not have the effect of rendering adverse, as to the vendor, the possession taken thereunder by the vendee who enters into possession in pursuance thereof. Although the instrument is invalid, the possession of the vendee is taken in pursuance thereof, and, therefore, amicably to the vendor; and, being so taken, it is looked upon as so continuing, regardless of the fact that the vendee cannot enforce his rights as purchaser under the contract." 1 Am. Law Rep., 1336.

This principle was applied in *Mitchell v. Freeman*, 161 N. C., 322, in which it was held that possession under a contract to convey which was void because not in writing was not adverse.

There is no error in the instructions of his Honor.

No error.